UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Westfield Insurance Company,                          Civ. No. 17-400 (PAM/LIB)

          Plaintiff,

v.                                                    **MEMORANDUM AND ORDER**

Miller Architects & Builders, Inc.,

          Defendant.

---

This matter is before the Court on the parties' cross-Motions for Summary Judgment or Partial Summary Judgment. For the following reasons, Plaintiff's Motion for Summary Judgment is denied and Defendant's Motion for Partial Summary Judgment is granted.

**BACKGROUND**

Defendant Miller Architects and Builders, Inc. ("Miller"), is a Minnesota-based design/build company. In 2013, a real-estate trust called IRET-Cardinal Point LLC ("IRET") hired Miller to design and build a two-building luxury apartment complex in Grand Forks, North Dakota. IRET ultimately terminated Miller's role in the project, ostensibly because of faulty construction and poor design. IRET then commenced arbitration against Miller under the terms of the parties' contract. That arbitration is ongoing, and is still in its preliminary stages.

In March 2015, Miller tendered IRET's allegations to its insurer, Plaintiff Westfield Insurance Company. Westfield determined that it had no duty to defend or indemnify Miller in the arbitration, and Westfield filed this lawsuit seeking a declaration

to that effect. Westfield now seeks summary judgment on its duty to defend. Miller has cross-moved for partial summary judgment, contending that Westfield's breach of its duty to defend means that Miller is entitled to recover the attorney's fees it has thus far expended in the arbitration as well as the fees it has incurred in defending this coverage action.

The parties focus their discussions on five broader categories of claimed damage, rather than each of the more than 65 separate damages claims IRET has preliminarily raised in the underlying arbitration. (Medeiros Aff. (Docket No. 31) Ex. 2.) Miller contends that all of these five categories fall within its insurance policies' coverage, and thus that the Court need look no further than the five categories to determine that Westfield has the duty to defend Miller in the arbitration. Westfield argues that none of these categories is covered and that Miller's failure to discuss the remaining items of damages constitutes a waiver of its claims regarding those remaining items. The waiver argument is specious and the Court will not address it further. The Court agrees with Miller that it can resolve the parties' dispute by examining these five categories of damages:

1. Water intrusion damage caused by Miller's subcontractor defectively installing the roof of one building, which caused electrical problems and damaged some of the finishes in the building.

2. Damage to concrete support beams caused by Miller's subcontractor drilling holes in those beams.

3.   Damage to the parking ramp because the ramps themselves were constructed at an improperly steep angle with no transition strip.

4.   Foundation problems allegedly caused by an unstable foundation.

5.   Loss of use because of the delay necessary to correct the defective work.

**DISCUSSION**

An insurer's duty to defend is determined by comparing "the allegations in the complaint in the underlying action with the relevant language in the insurance policy." Meadowbrook, Inc. v. Tower Ins. Co., 559 N.W.2d 411, 415 (Minn. 1997) (emphasis omitted). An insurer has a duty to defend all claims even if only one of the claims is "arguably" covered by its policy. Jostens, Inc. v. Mission Ins. Co., 387 N.W.2d 161, 165 (Minn. 1986) (quotation omitted). It is the insurer's burden to demonstrate that "each claim asserted in the lawsuit clearly falls outside the policy." Murray v. Greenwich Ins. Co., 533 F.3d 644, 648 (8th Cir. 2008) (quoting Jostens, 387 N.W.2d at 165-66). And all "[d]oubts as to coverage must be resolved against the insurer issuing the policy in favor of coverage." Id. (citation omitted).

This case requires construction of perhaps the most oft-litigated provisions in standard Commercial General Liability ("CGL") insurance policy[1] forms, the products-completed-operations-hazard provision and its interaction with the "your work" exclusion. These provisions appear to be drafted to intentionally obscure coverage

---

[1] Miller had both a standard CGL policy and an umbrella policy with Westfield. Westfield contends that the policies are substantially identical for purposes of this matter. Miller does not concede that point, but given that neither party relies on the terms of the umbrella policy for its arguments here, the Court will confine its analysis to the CGL policy.

3

decisions, and after more than 30 years of use, it is past time for insurance companies to re-draft them so that exercises like those presented in these Motions are unnecessary. Given that the policies at issue contain this standard and opaque language, however, the Court must determine Westfield's duty to defend Miller based on that language.

Miller's CGL policy provides insurance for "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage'" that is "caused by an 'occurrence.'" (Compl. Ex. 1, CG0010413 ¶ 1.a-.b (Docket No. 1-1 at 125).) However, the policy excludes from coverage "property damage" to

> (j)(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or
>
> (6)     That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.
>
> Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."
>
> . . . .
>
> (*l*) "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."
>
> This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

(Id. ¶¶ j(5)-(6), *l* (Docket No. 1-1 at 129).)

The "products-completed operations hazard" in turn provides for coverage from damage "arising out of . . . 'your work'" unless the "work . . . has not yet been completed or abandoned." (Id. ¶ 16.a(2) (Docket No. 1-1 at 139).)

4

Thus, according to these provisions, the policy excludes from coverage all damage caused by defective work, unless the damage was caused after the insured's work was completed. And even if the work was completed, damages are still excluded unless the work was performed by a subcontractor. There seems to be no dispute that Miller's subcontractors' work cause most if not all of the five categories of damages listed above.

**A.     Business Risk**

Westfield first argues that the Court should apply the business risk doctrine to the policy provisions. Under that doctrine, commercial insurance policies are interpreted to exclude coverage for damage caused by conduct that would constitute a breach of contract, such as defective design, faulty construction, and the like. See Thommes v. Milwaukee Ins. Co., 641 N.W.2d 877, 880-81 (Minn. 2002) (discussing business risk doctrine). Westfield, relying primarily on a law review article written by counsel here, contends that the business risk doctrine mandates the grant of summary judgment in Westfield's favor.

But the business risk doctrine arose out of a previous, even more opaque, version of the standard-form CGL policy, one that was replaced in 1986 by the current version and the exclusions quoted above. See Wanzek Constr., Inc. v. Emp'rs Ins. of Wausau, 679 N.W.2d 322, 326 (Minn. 2004) (discussing history of standard-form CGL policies). Thus, as the Minnesota Supreme Court stated, the idea that the business risk doctrine governs the terms of the newer CGL policy is "incorrect." Id. at 327. Rather, "the extent to which [the] CGL policy covers the business risk of [the insured] must be determined by the specific terms of the insurance contract." Id. Because the policy indicates, albeit

5

inartfully, what is covered and what is excluded from coverage, the Court need not resort to the business risk doctrine when examining the policy's provisions.

**B.     Occurrence**

Westfield next asserts that the damages IRET claims in the underlying arbitration are not "occurrences" within the meaning of the CGL policy. The policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Compl. Ex. 1, CG0010413 ¶ 13 (Docket No. 1-1 at 139).) The parties agree that Minnesota law defines "accident" as "an unexpected, unforeseen, or undesigned happening or consequence from either a known or an unknown cause." Remodeling Dimensions, Inc. v. Integrity Mut. Ins. Co., 819 N.W.2d 602, 611 (Minn. 2012) (quoting Hauenstein v. Saint Paul-Mercury Indem. Co., 65 N.W.2d 122, 126 (Minn. 1954)).

Westfield relies on cases in which a contractor knowingly deviated from contract specifications for its argument that an "occurrence" did not cause the damages at issue. But even if discovery in the arbitration reveals that Miller's subcontractors knowingly or intentionally deviated from the design specifications, that deviation is still unintended and an "accident" from Miller's perspective. Moreover, as the policy acknowledges, damage caused by the work of a subcontractor is not excluded from coverage. (Compl. Ex. 1 CG0010413 ¶ *l* (Docket No. 1-1 at 129).) Westfield cannot escape its duty to defend through a creative interpretation of the policy's definition of "occurrence."

6

## C.  Products-Completed Operations Hazard

The policy excludes from coverage damage to which the products-completed operations hazard applies, unless that work was performed by a subcontractor.  (Id. ¶ *l* (Docket No. 1-1 at 129).)  Although the exclusion purports to exclude from coverage all damage "arising out of 'your product' or 'your work' (id. ¶ 16 (Docket No. 1-1 at 139)), it does not apply to "[w]ork that has not yet been completed or abandoned."  (Id. ¶ 16.a(2).)  The policy deems "your work" completed "when all of the work called for in your contract has been completed."  (Id. ¶ 16.a(2)(a).)

Westfield concedes that if the claims fall within the subcontractor exception in exclusion *l*, the claims are arguably covered.  According to Westfield, exclusion *l* does not apply because Miller's work on the project was not "complete" and thus the products-completed operations hazard does not apply in the first instance.

Westfield characterizes Miller's departure from the project as a termination for cause, arguing that therefore Miller did not complete its work on the project.  The evidence, however, does not support this characterization.  Rather, Miller and IRET agreed that IRET terminated Miller "for convenience" and not for cause. (Kallhoff Decl. (Docket No. 34) Ex. C at 1 (stating that "IRET terminated the MAB Contract under Section 9.3"); id. Ex. B § 9.3 (titled "Termination by Owner Without Cause").)  Because Miller completed its obligations to IRET, its work on the project was completed for purposes of the products-completed operations hazard, and the subcontractor exception applies.  At least some of IRET's claims arise out of the work of Miller's subcontractors,

7

and those claims are thus arguably covered by the policy. Westfield has the duty to defend Miller in the arbitration.

**D.   Miller's Motion**

Miller seeks a ruling that Westfield breached its duty to defend and owes Miller the costs and fees Miller expended in defending the arbitration and in defending this coverage action. Westfield does not take issue with the premise that if a claim is arguably covered, it had the duty to defend as of the time Miller tendered the offer. Instead, Westfield insists that IRET has not raised any arguably covered claims in the arbitration.

Having determined that at least some of the claims in the arbitration are arguably covered, the inescapable conclusion is that Westfield breached its duty to defend and Miller is entitled to recover its defense costs, including attorney's fees, from Miller's tender to Westfield in March 2015 to the present. Those costs include the fees and costs Miller incurred in litigating this coverage action. See Westfield Ins. Co. v. Kroiss, 694 N.W.2d 102, 107-08 (Minn. Ct. App. 2005) (concluding that attorney's fees in declaratory-judgment action constitute damages arising out of the breach of the duty to defend).

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED that**:

1. Westfield's Motion for Summary Judgment (Docket No. 26) is **DENIED**; and

2.  Miller's Motion for Partial Summary Judgment (Docket No. 24) is **GRANTED**.

Dated: <u>January 19, 2018</u>

*s/ Paul A. Magnuson*
Paul A. Magnuson
United States District Court Judge
